<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|   |   |   |
|---|---|---|
| RA-KING ALLEN, | : : : | |
| Plaintiff, | : : | Civil Action No. 16-1660-BRM-DEA |
| v. | : : : | |
| NEW JERSEY STATE POLICE, et al., | : : | **OPINION** |
| Defendants. | : : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss the Complaint (ECF No. 1) of plaintiff Ra-King Allen ("Plaintiff") filed by New Jersey State Police, Superintendent Joseph R. Fuentes, and State Trooper Richard Nugnes (collectively, the "State Defendants") (ECF No. 12). Plaintiff opposes this motion. (ECF No. 13.) Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. For the reasons set forth below, the State Defendants' motion is **GRANTED**.

**I.   BACKGROUND[1]**

   **A.   FACTUAL BACKGROUND**

This action arises out of a motor vehicle stop that occurred on April 28, 2008 in Warren County, New Jersey. (ECF No. 1 at ¶¶ 13-14.) Plaintiff was the passenger in a vehicle being driven by his uncle that was stopped for a motor vehicle violation by the New Jersey State Police. (*Id.* at ¶¶ 14-15.) Defendant State Trooper Richard Nugnes ("Nugnes") was among the troopers involved in the stop. (*Id.*) After determining both the driver and Plaintiff had valid outstanding warrants,

---

[1] The facts set forth in this Opinion are taken from Plaintiff's Complaint (ECF No. 1), the parties' briefs and related filings.

1

both individuals were placed under arrest. *See State of New Jersey v. Allen,* 2011 N.J. Super. Unpub. LEXIS 2445, *2 (N.J. App. Div. Sept. 23, 2011).[2] During a search incident to those arrests, marijuana was found on Plaintiff's person. *Id*. Nugnes then directed the car to be towed and a tow truck driver, Joseph Sense ("Sense"), arrived at the scene. (ECF No. 1 at ¶¶ 15-16; *see also* ECF No. 12-3.) At some point after Sense arrived, the vehicle's trunk was inadvertently opened and Nugnes discovered a quantity of drugs and drug paraphernalia inside a container in the trunk. (ECF No. 1 at ¶¶ 17-20.) As a result, Plaintiff was arrested for and charged with possession of a controlled dangerous substance. (*Id*. at ¶ 22.) Plaintiff alleges "[t]his contraband was not in plain view." (*Id*. at ¶ 21.)

At the trial court, Plaintiff made a motion to suppress the evidence as being illegally seized without a warrant. (*Id*. at ¶ 23.) The trial judge denied the motion and Plaintiff pled guilty. (*Id*. at ¶ 24.) As a result of his guilty plea, Plaintiff received a sentence of fourteen (14) years imprisonment with a fifty-seven (57) month period of parole ineligibility. (*Id*. at ¶ 25.) On September 23, 2011, the Appellate Division affirmed the trial court's denial of Plaintiff's motion to suppress. (*Id*. at ¶ 26.) Plaintiff appealed to the New Jersey Supreme Court and, on December 6, 2013, the matter was remanded back to the trial court for additional findings of fact. (*Id*. at ¶ 27.)

On remand, the trial court concluded the trunk was opened inadvertently by Sense, without direction by Nugnes. (*Id*. at ¶ 28; *see also* ECF No. 12-3 at 4.) The trial court further concluded

---

[2] While courts typically cannot consider matters outside of the pleadings when deciding a motion to dismiss, there is an exception to this general rule when a document is integral to, or explicitly relied upon in, the complaint. *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted). Plaintiff expressly refers to the Appellate Division's September 23, 2011 decision in his Complaint (ECF No. 1 at ¶ 26) and, therefore, the Court may rely upon that decision when deciding this motion.

Nugnes saw something suspicious in the trunk, asked Sense not to close the trunk lid, and then leaned over and handled whatever was in the trunk. (*Ibid*.) The trial court ultimately found, however, the drugs and drug paraphernalia in question were not directly visible prior to Nugnes's intrusion into the trunk. (*Id*.) As a result of those findings, on June 23, 2015, after he had been incarcerated for fifty-seven (57) months, the New Jersey Supreme Court vacated Plaintiff's conviction. (ECF No. 1 at ¶¶ 30-31.)

Plaintiff commenced this action on March 24, 2016, asserting claims against the State Defendants for: (1) violation of his Fourth Amendment right to be free from unreasonable searches and seizure, pursuant to 42 U.S.C. § 1983 and Art. 1 s. 7 of the New Jersey State Constitution; (2) failure to implement appropriate policies, customs and practices, pursuant to 42 U.S.C. § 1983; (3) negligent hiring and retention; and (4) malicious prosecution. (ECF No. 1 at 4-7.) The State Defendants now move to dismiss the Complaint in its entirety, pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 12.)

## II.   LEGAL STANDARD

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the

factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DECISION

The State Defendants argue Plaintiff's claims under 42 U.S.C. § 1983 and for negligent hiring should be dismissed because they are all barred by a two-year statute of limitation. (ECF No. 13-1 at 6-7.) The State Defendants contend these claims began to accrue on April 28, 2008, the date Plaintiff was searched, arrested and charged with "possession of a controlled dangerous substance." (*Id.* at 8 (citing ECF No. 1 at ¶ 22).) At a minimum, the State Defendants argue, Plaintiff was aware of his alleged injury in 2010 when he made a motion to suppress the evidence

4

as being illegally seized without a warrant. (*Id*. at 9.) Finally, the State Defendants argue Plaintiff's claim for malicious prosecution fails because that claim cannot be based solely on an allegedly unconstitutional search and seizure. (*Id*. at 10.) The State Defendants assert Plaintiff's conviction was based on an intervening independent judicial review that did not suppress evidence obtained by an unlawful search or seizure, and that review serves as a superseding cause of liability that breaks the chain of causation for the purpose of § 1983 liability. (*Id*. (citing *Egervary v. Young*, 366 U.S. 238, 250-51 (3d Cir. 2004)).)

In opposition, Plaintiff does not contest his claims are governed by a two-year statute of limitations. Rather, Plaintiff argues the statutes of limitations for his illegal search and seizure, failure to implement appropriate policies, and negligent hiring and retention claims were tolled until his conviction was vacated. (ECF No. 13 at 4.) Relying on *Heck v. Humphrey*, 512 U.S. 477 (1994), Plaintiff argues he "could not bring this action until his conviction was vacated" and, "[t]hus[,] the 2-year statute of limitations did not begin to run until June 23, 2015, and Plaintiff's action is timely." (*Id*. at 5.) With respect to his malicious prosecution claim, Plaintiff argues "Nugnes engaged in deceit during his suppression hearing testimony, which led to the judicial decision. Therefore, there is no valid intervening cause, and the malicious prosecution cause of action cannot be dismissed." (*Id*. at 6.) Specifically, Plaintiff contends that Nugnes's testimony often contradicted with Sense's testimony at the initial suppression hearing and subsequently on remand. (*Id*.) Plaintiff points to the trial judge's opinion on remand, in which he stated that Nugnes's testimony was "evasive," "imprecise" and "equivocal," and that "[his] manner did not inspire confidence in his concern for truthfulness and accuracy." (*Id*. at 14.)

### A.     Plaintiff's Section 1983 and Negligent Hiring Claims (Counts I – III)

"Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989); and *Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985)). "Thus, a section 1983 claim arising in New Jersey has a two-year statute of limitations." *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (2010) (citations omitted) ("A section 1983 claim is characterized as a personal-injury claim and thus is governed by the applicable state's statute of limitations for personal-injury claims.").

However, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law" and is instead governed by "federal rules conforming in general to common-law tort principles." *Wallace*, 549 U.S. at 387 (citing *Heck*, 512 U.S. at 483; and *Carey v. Piphus*, 435 U.S. 247, 257-58 (1978)). "Under those principles, it is 'the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id*. (citing *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)) (internal marks and citations omitted).

In his complaint, Plaintiff states that he was charged with "possession of a controlled dangerous substance" as a result of his arrest on April 28, 2008. (ECF No. 1 at ¶ 22.) Thus, Plaintiff's cause of action for unreasonable search and seizure began to accrue on that date. Indeed, in his Complaint, Plaintiff alleges "[o]n April 21, 2008, Defendants violated Plaintiff's right to be free from unlawful searches and seizures" when "Defendants performed an unlawful search resulting in Plaintiff's arrest." (*Id*. at ¶¶ 38-39.) Because Plaintiff filed his Complaint nearly seven

(7) years later, his unreasonable search and seizure claim is barred by the applicable two-year statute of limitations.

The same analysis applies to Plaintiff's Section 1983 claim for failure to implement appropriate policies, customs and practices. Plaintiff's Complaint alleges that "[o]n April 21, 2008 until June 23, 2015, Defendants deprived Plaintiff, under color of statute, ordinance, regulation, custom or usage, of rights, privileges, and immunities secured to Plaintiff by the Fourth and Fourteenth Amendments to the Constitution of the United States" and New Jersey State Constitution. (ECF No. 1 at 36.) These deprivations allegedly occurred when the State Defendants "implicitly or explicitly adopted and implemented careless and reckless policies, customs, or practices, that include, among other things, allowing employees to conduct warrantless and unlawful searches." (*Id.* at ¶ 47.) Plaintiff further alleges their subsequent failure "to adequately train and supervise" Nugnes "amounts to a deliberate indifference to the rights of the Plaintiff to be free from unlawful searches and seizures." (*Id.* at 48.)

For the same reasons set forth above, this claim began to accrue at the time of his search on April 21, 2008, the date on which the State Defendants' allegedly "wrongful act or omission result[ed] in damages" to Plaintiff. *Wallace*, 549 U.S. at 391. In fact, Plaintiff's opposition concedes this point. (*See* ECF No. 13 at 2 ("All the causes of action arise out of the events of a traffic stop which took place on April 28, 2008.").) At the latest, however, Plaintiff was aware of his alleged injury (*i.e.*, being subjected to an unreasonable search and seizure), at the time he made a motion to suppress the evidence as being illegally seized without a warrant some time prior to

September 23, 2011.[3] To be timely, then, Plaintiff's claim for failure to implement appropriate policies needed to be filed, at the latest, by September 23, 2013, but it was not.

Likewise, Plaintiff's negligent hiring claim suffers the same fate. Plaintiff alleges "Nugnes is an unfit employee, who performed unlawful searches and seizures" because the State Defendants "failed to train, supervise, or remove Defendant Nugnes." (ECF No. 1 at ¶¶ 54-58.) Nugnes's alleged wrongdoing was his alleged performance of "unlawful searches and seizure." Here, the "wrongful act or omission resulting in damages" to Plaintiff, *see Wallace*, 549 U.S. at 391, occurred on April 28, 2008, when he was allegedly unlawfully searched and seized. It necessarily follows that any failure to train, supervise, or remove Nugnes must also have occurred before that date. Plaintiff's negligent hiring claim began to accrue nearly eight (8) years before he filed his complaint and, therefore, it is time-barred by New Jersey's two-year statute of limitations. *See* N.J.S.A. 2A:14-2.

### i. Whether *Heck* Tolling Applies

As noted above, Plaintiff contends his Section 1983 and negligent hiring causes of action are tolled "[u]nder *Heck*, [because] Plaintiff could not bring this action until his conviction was vacated." (ECF No. 13 at 5.) Plaintiff's reliance on *Heck*, decided before *Wallace*, and *Gibson v. Superintendent of New Jersey Department of Law & Public Safety*, 411 F.3d 427 (3d Cir. 2005), which was expressly abrogated by *Dique*, is entirely misplaced.

The petitioner in *Wallace*, an arrestee, brought a § 1983 action against city police detectives alleging, among other things, unlawful arrest. 549 U.S. at 387. The arrest occurred in January 1994 and petitioner was subsequently charged and convicted of murder, but the charges were ultimately

---

[3] Plaintiff's Complaint does not identify the date his motion to suppress was made. However, the Appellate Division affirmed the trial court's denial of that motion on September 23, 2011. Therefore, logic dictates the motion was filed sometime prior to September 23, 2011.

8

dropped in April 2002. *Id*. at 386-87. In April 2003, petitioner filed his § 1983 suit against the city and several of its officers, seeking damages for, among other things, his unlawful arrest in violation of the Fourth Amendment. *Id*. at 387. The district court granted summary judgment in favor of the city and the Seventh Circuit affirmed, finding the petitioner's suit was time-barred "because his cause of action accrued at the time of his arrest, and not when his conviction was later set aside." *Id*. The Supreme Court agreed because "[t]here can be no dispute that petitioner could have filed suit as soon as the allegedly wrongful arrest occurred, subjecting him to the harm of involuntary detention, so the statute of limitations would normally run from that date." *Id*. at 388. The Supreme Court expressly rejected the same argument raised by Plaintiff here: "that the date of his release from custody must be the relevant date in the circumstances of the present suit, since he is seeking damages up to that time." *Id*. at 391. Rather, the Supreme Court explained that Fourth Amendment causes of action under § 1983 "accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable." *Id*. (citation omitted). "Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Id*.

In doing so, the *Wallace* Court made clear that its ruling in *Heck* did not directly affect statute of limitations periods for non-malicious prosecution § 1983 actions, stating: "the *Heck* rule for deferred accrual is called into play only when there exists 'a conviction or sentence that has *not* been . . . invalidated,' that is to say, an 'outstanding criminal judgment.'" 549 U.S. at 393-94. Indeed, the Supreme Court refused to adopt "a principle that goes well beyond *Heck*: that an action which would impugn an anticipated future conviction cannot be brought until that conviction occurs and is set aside" because "[t]he impractically of such a rule should be obvious." *Id*. at 393

9

("We are not disposed to embrace this bizarre extension of *Heck*."). Although mindful of the "complication" that "arises from the fact that § 1983 actions, unlike the tort of malicious prosecution . . . sometimes accrue before the setting aside of – indeed, even before the existence of – the related criminal conviction," the Supreme Court expressly refused to adopt a federal tolling rule to apply to related to § 1983 claims when the *Heck* bar affects the accrual date for a related malicious prosecution claim. *Id*. at 394-95 ("Under such a regime, it would not be known whether tolling is appropriate by reason of the *Heck* bar until it is established that the newly entered conviction would be impugned by the not-yet-filed, and thus utterly indeterminate, §1983 claim."). To the contrary, the Supreme Court stated in dicta that a federal tolling rule in relation to *Heck* "would hardly be desirable" because "[d]efendants need to be on notice to preserve beyond the normal limitations period evidence that will be needed for their defense." *Id*. at 395.

In *Dique*, the Third Circuit was faced with a similar situation. The plaintiff in *Dique* was arrested in 1990, after having been the victim of racial profiling. 603 F.3d at 183. Nine years later, in June 1999, the plaintiff was convicted in state court on drug-related charges, arising from the stop, and sentenced to fifteen years in prison. *Id*. at 183-84. In April 2002, the State moved to vacate his conviction and dismiss the indictment as a result of the racial profiling. *Id*. at 184. "In February 2004, Dique filed suit based on the January 1990 traffic stop, alleging violations of federal law, including 42 U.S.C. §§ 1983 and 1985, and of state law." *Id*. at 184 (noting the section 1983 claims were for false arrest and selective-enforcement under the Fourth and Fourteenth Amendments, respectively). The district court granted summary judgment in favor of the defendants, finding Dique's claims time-barred by the applicable statute of limitations, and the Third Circuit affirmed. *Id*. The Third Circuit found that the Supreme Court's decision in *Wallace*, "which clarified the *Heck* rule, extends to Fourth Amendment selective-enforcement claims and

10

thus overrides [its] decision in *Gibson*." *Id*. The Third Circuit interpreted *Wallace* as "refus[ing] to extend *Heck* to a § 1983 claim for false arrest in which there was no outstanding conviction at the time of the accrual, *i.e.*, the arrest" and also "clarify[ying] that the *Heck* bar is applicable only when, at the time the § 1983 suit would normally accrue, there is an existing criminal conviction. . . ." *Dique*, 603 F.3d at 187 (citations omitted). "Under *Wallace* then, the statute of limitations 'began to run at the time Dique became detained pursuant to legal process." *Id.* at 188. The Third Circuit reasoned:

> When Dique was stopped on the New Jersey Turnpike, as the Court in *Wallace* stated, "there was in existence no criminal conviction that the [§ 1983] cause of action would impugn; indeed, there may not even have been an indictment." 549 U.S. at 393. Nor, at that time, could one determine if there would ever be an indictment or a conviction – this is an important distinction from a *Heck*-type case in which malicious prosecution involves the indictment and trial process, along with the conviction.

*Id*.

Like the plaintiffs in *Wallace* and *Dique*, extending *Heck* to a § 1983 claim in which there was no outstanding conviction at the time of the accrual, *i.e.*, the allegedly unlawful search and resulting arrest, would be improper. *See Dique*, 603 F.3d at 187 (citing *Wallace*, 549 U.S. at 393). When Plaintiff was stopped, searched and arrested "there was in existence no criminal conviction that the § 1983 cause of action would impugn; indeed, there may not even have been an indictment. Nor, at that time, could one determine if there would ever be an indictment or a conviction." *Id*. at 188. The "*Heck* bar is applicable only when, at the time the § 1983 suit would normally accrue, there is an existing criminal conviction." *Id*. at 187. Because no such conviction existed at the time of Plaintiff's search, *Heck* is inapplicable.

Plaintiff has offered no other basis for why his claims should be tolled and, based on a review of the record, this Court concludes none exists.

11

### B. Plaintiff's Malicious Prosecution Claim (Count IV)

It is well-settled that "'[t]he evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all.'" *Hector v. Watt*, 235 F.3d 154, 157 (3d Cir. 2000) (citing *Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999)). As such, "[v]ictims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy – including (where appropriate) damages for physical injury, property damage, injury to reputation, etc.; but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution.'" *Id.*

Moreover, the Third Circuit "adhere[s] to the well-settled principle that, in situations in which a judicial officer or other independent intermediary applies the correct governing law and procedures but reaches an erroneous conclusion because he or she is misled in some manner as to the relevant facts, the causal chain is not broken and liability may be imposed upon those involved in making the misrepresentations or omissions." *Egervary v. Young*, 366 F.2d 238, 250 (3d Cir. 2004) (citing *Hand*, 838 F.2d at 1427-28; and *Hector*, 235 F.3d at 164 (citing cases)). There is, however, "a distinction between that situation and . . . [one] where the actions of the defendants, while clearly a cause of the plaintiff's harm, do not create liability because of the intervention of independent judicial review, a superseding cause." *Id.* Thus, where "the judicial officer is provided with the appropriate facts to adjudicate the proceeding but fails to properly apply the governing law and procedures, such error must be held to be a superseding cause, breaking the chain of causation for purposes of § 1983 . . . liability." *Id.* at 250-51 (citations omitted).

In his Complaint, Plaintiff alleges a criminal prosecution was instituted against him and later terminated in his favor by dismissal. (ECF No. 1 at ¶¶ 64-65.) Plaintiff contends "[t]here was an absence of probable cause to commence the proceeding" and, further, "[t]here was actual malice

12

as evidenced by the lack of probable cause for the charge." (*Id*. at ¶¶ 66-67.) The State Defendants argue that, because Plaintiff's conviction was based on an intervening independent judicial review that did not suppress evidence obtained by an unlawful search or seizure, that review serves as a superseding cause that breaks the chain of causation for the purposes of § 1983 liability. (ECF No. 12-1 at 11.) In opposition, Plaintiff argues, for the first time, "Nugnes engaged in deceit during his suppression hearing testimony, which led to the judicial decision. Therefore, there is no valid intervening cause, and the malicious prosecution cause of action cannot be dismissed." (ECF No. 13 at 6.)

Plaintiff's Complaint, however, is silent as to any alleged deceit. Indeed, the Complaint fails to plead any facts at all relating to any conduct by Nugnes at trial or any hearing, let alone showing any of the State Defendants coerced or deceived any of the State courts. Instead, Plaintiff's malicious prosecution claim, as pled in his Complaint, is based entirely on Nugnes allegedly unlawful search and seizure of contraband from the automobile, or other actions at the scene. (*See generally* ECF No. 1; *see also* ECF No. 13 at 2 ("All the causes of action arise out of the events of a traffic stop which took place on April 21, 2008.").) To the extent Plaintiff's malicious prosecution claim is premised on the State Defendants' alleged deceit or coercion, the Complaint fails to satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b). Although Plaintiff raises, for the first time, new allegations relating to Nugnes's alleged conduct during the suppression hearing and trial, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. Of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). Since Plaintiff failed to plead these facts in his Complaint, the Court will not consider them. *See Anderson v. DSM N.V.*, 589 F. Supp. 2d 528, 534 (D.N.J. 2008) (citing *Bev. v. Daimler Chrysler Servs. of N. Am.*, 2006 WL 361385, at *11 (D.N.J. Feb. 15, 2006) (holding

"claims [that] were not alleged in the complaint [] cannot be raised for the first time in opposition to a motion for summary judgment")) (additional citations omitted).

Here, Plaintiff's Complaint does not allege that the initial trial court's refusal to suppress evidence was induced by deception or coercion on the part of the State Defendants. Nor does Plaintiff allege the Supreme Court of New Jersey's decision to vacate his conviction was based on any finding of fraud or deception by any of the State Defendants. To the contrary, as pled in his Complaint, Plaintiff's malicious prosecution claim is based entirely on the allegedly unconstitutional search by Nugnes. As a matter of law, however, a malicious prosecution claim cannot be based solely on an unconstitutional search and seizure by police. *Hector*, 235 F.3d at 157. Moreover, the Complaint fails to establish Nugnes's allegedly unconstitutional search and seizure was a proximate cause of his injuries because his conviction was the result of in intervening independent judicial review. *Egervary*, 36 F.3d at 250-51. Plaintiff's Complaint, therefore, fails to state a claim for malicious prosecution.

## IV. CONCLUSION

For the reasons set forth above, the State Defendants' Motion to Dismiss (ECF No. 12) is **GRANTED** and Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE**. Plaintiff shall have thirty (30) days from the date of this Opinion to file an Amended Complaint that cures the defects identified herein. An appropriate Order will follow.

**Date: March 7, 2017**                         */s/ Brian R. Martinotti*
                                                                 **HON. BRIAN R. MARTINOTTI**
                                                                 UNITED STATES DISTRICT JUDGE